IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THE WHITESTONE GROUP, INC., )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>THE COMMITTEE FOR FAIR )<br>AND EQUAL REPRESENTATION, )<br>)<br>Defendant. ) | Case No. 12 C 9261 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Two arbitrators issued awards in favor of employees represented by their labor union, the Committee for Fair and Equal Representation (CFER), in connection with grievances CFER submitted against their employer, Whitestone Group, Inc. (Whitestone). Whitestone has sued to overturn these awards, and CFER has counterclaimed to enforce them. Both parties have moved for summary judgment. For the reasons stated below, the Court grants CFER's motion for summary judgment and denies Whitestone's motion.

### Background

Whitestone is a corporation that provides security services for governmental and private entities throughout the country. Ron Hrubec and Nikola Radovanovic were both employed by Whitestone as contract security officers. Hrubec worked security at the Federal Aviation Administration's (FAA) Aurora air traffic control facility. Radovanovic worked security at the air traffic control tower at O'Hare International Airport.

Hrubec and Radovanovic are both members of CFER. A collective bargaining agreement (CBA) between Whitestone and CFER governs the terms and conditions of their employment.

**A.    Hrubec's discharge and arbitration award**

On October 1, 2011, Whitestone assumed responsibility for providing security services at the FAA's Aurora facility. Whitestone's work at this facility ended on September 30, 2012, when it was replaced by another contractor.

Hrubec was an employee of Whitestone who worked at the Aurora facility pursuant to Whitestone's contract with the FAA. As a security officer, Hrubec regulated access to the facility by FAA employees and other authorized personnel.

After he underwent a background check and completed FAA training sessions, Hrubec was issued a personal "PIV" access card by the FAA. The PIV card provided admittance to and within the FAA Aurora facility and other FAA facilities around the country. The card contained the cardholder's photograph, a fingerprint, and other electronic data concerning the card holder. The card also bore a written admonition that its misuse would subject the holder to criminal penalties under 18 U.S.C. § 499.

On November 29, 2011, FAA management became aware that Hrubec had allowed another Whitestone employee – his son Stephen Hrubec (Stephen) – to use his PIV card to access the facility. At the time, Stephen was a probationary employee working at the same facility. Hrubec loaned Stephen the PIV card because, as a probationary employee, Stephen had no PIV card of his own and thus no means to gain entry to the FAA facility to conduct the security patrols that he was required to perform. After learning what Hrubec had done, Hrubec's supervisor met with him and confronted him with the allegations. Hrubec says that his supervisor stated that he would

2

recommend a written reprimand as a sanction. Hrubec admitted to the infraction, stating that he had allowed Stephen to use his PIV access card for two or three weeks, and explaining why. Whitestone's president concluded that Hrubec should be terminated because he had violated federal law as well as company rules regarding breach of security. Whitestone terminated Hrubec on December 1, 2011.

CFER then submitted a grievance challenging Hrubec's termination. The grievance proceeded to arbitration. While the grievance was pending before an arbitrator, Whitestone received or obtained a letter from the FAA, dated April 5, 2012. *See* Compl., Ex. C. The letter reflected that Whitestone had advised the FAA that Hrubec was seeking reinstatement. The FAA stated that Hrubec's actions "potential[ly]" violated 18 U.S.C. §§ 499 and 506 and that as a result, the FAA would deem Hrubec "unsuitable" to work at an FAA facility. The letter concluded that although Hrubec "may be employed by Whitestone, [he] would not be authorized to work under our contract for security officer services." *Id.*

On October 1, 2012, the day after Whitestone's contract with the FAA expired, the arbitrator issued a decision regarding CFER's grievance. *See* Compl., Ex. E. The arbitrator noted that Whitestone cited provisions of the CBA stating that "[t]he Employer shall retain the sole right to suspend, discipline and discharged employees for just cause, subject only to the express and specific terms of the Agreement," and that "employment shall cease . . . [if] [t]he employee commits a serious breach of security." *See* Compl., Ex. E at 4. The arbitrator also noted that CFER cited a provision of the CBA stating that "[n]o employee . . . shall be disciplined in an arbitrary or capricious manner; all discipline shall be for just cause." *Id.* The arbitrator found that the company had acted precipitously, without giving the union or Hrubec a chance to present

3

mitigating facts, including supervisors' alleged awareness of and non-objection to Hrubec's loaning of his PIV card and Whitestone's less-harsh treatment of other employees who had committed equally serious violations. The arbitrator also found that Whitestone had never given a prior indication that it considered sharing a PIV card to be a "serious breach of security" within the meaning of the cited CBA provision. For these reasons, the arbitrator concluded that Whitestone had not terminated Hrubec for just cause. He directed Whitestone to reinstate Hrubec to his prior position with full back pay and seniority.

**B.     Radovanovic's discharge and arbitration award**

Radovanovic worked for Whitestone as a security officer at the FAA air traffic control tower facility at O'Hare International Airport. He had worked at the same facility for the prior security contractor and was hired by Whitestone when it took over the contract in October 2011. Radovanovic could not start work with Whitestone immediately, however, because he was awaiting issuance of a state permit to carry a weapon. Whitestone was aware of this and deferred Radovanovic's entry onto duty until he had obtained the permit.

Radovanovic entered onto duty for Whitestone on January 3, 2012. During his short tenure with Whitestone, FAA management and other security guards reported to Whitestone that he was taking excessively long breaks, and he required verbal counseling by a supervisor due to "emotional immaturity." Radovanovic also acted inappropriately in a situation when a pilot, who was armed, asked to tour the control tower facility. Radovanovic went to the FAA official on site to clear the pilot to tour the facility. The official told Radovanovic that he needed to deal with his own manager (from Whitestone), which was, in fact, the appropriate procedure. Radovanovic then

4

told the FAA official that his manager was unavailable. This was untrue, and it also suggested to the FAA official that the Whitestone supervisor was not on the job as required. Citing these matters, including a failure to follow the proper chain of command, Whitestone terminated Radovanovic's employment on February 7, 2012.

CFER filed a grievance challenging Radovanovic's termination, contending that just cause was lacking. The grievance proceeded to arbitration. Whitestone took the position that Radovanovic was a probationary employee despite his service with the prior contractor, which otherwise would have counted for seniority purposes. Whitestone contended that because Radovanovic did not start working right away when Whitestone hired him in October 2011, his absence constituted a break in service and that his actual hiring date was the date he resumed work, January 3, 2012. Whitestone contended that for this reason, Radovanovic had less than ninety days of service at the time of his termination. As a result, Whitestone argued, Radovanovic was a probationary employee not entitled to the benefit of the "just cause" provision of the CBA or to seek arbitration.

On September 17, 2012, an arbitrator issued an award sustaining the grievance in part. First, the arbitrator concluded that Radovanovic was not a probationary employee. The arbitrator noted that Whitestone was fully aware of the situation involving the issuance of the firearm permit and had agreed that it was reasonable for Radovanovic to delay his return to duty until the permit was issued. The arbitrator also noted that no one at Whitestone had ever indicated to Radovanovic that he was considered a probationary employee. Finally, the arbitrator cited the fact that Whitestone's own internal documentation listed Radovanovic's seniority date as the date he had started working for the prior contractor, not January 2012.

With regard to the issue of discipline, the arbitrator agreed with Whitestone that the evidence "clearly establishe[d] that [Radovanovic] displayed an insubordinate and uncooperative pattern of behavior during his short tenure" with Whitestone. Compl., Ex. F at 14. The arbitrator stated that some of the issues cited – regarding argumentativeness and excessive break time – were "lesser rule violations," but that Radovanovic's "breaches of the chain of command and dishonesty are serious rule violations" that did not necessary require progressive discipline. *Id.* at 15-16. The arbitrator further found, however, that Radovanovic had appropriately documented the incident in question so that his manager would be aware of it, which the arbitrator considered to be a mitigating factor. The arbitrator also concluded that "there is little doubt that [Whitestone] would move to summarily discharge [Radovanovic] unless he was deemed a probationary employee." *Id.* at 16. She noted that Whitestone had never warned Radovanovic that he was facing discharge, and she determined that his conduct was not irremediable. For these reasons, the arbitrator found that just cause was lacking. She directed reduction of Radovanovic's discharge to a thirty-day suspension, to be followed by reinstatement with back pay, seniority, and benefits.

## Discussion

"Judicial review of arbitration awards is extremely limited." *Johnson Controls, Inc. Sys. & Services Div. v. United Ass'n of Journeymen & Apprentices of Plumbing & Pipe Fitting Indus. of U.S. & Canada, AFL–CIO*, 39 F.3d 821, 824 (7th Cir. 1994); *Ethyl Corp. v. United Steelworkers of Am.*, AFL–CIO–CLC, 768 F.2d 180, 183 (7th Cir. 1985). In the labor law context, "[t]he refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements. The federal policy of settling labor disputes by arbitration would be undermined if courts

6

had the final say on the merits of the awards." *United Steelworkers of Am. v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 596 (1960).

An arbitrator's decision may be unenforceable in court if it is contrary to an "explicit, well defined, and dominant public policy." *E. Associated Coal Corp. v. United Mine Workers of Am.*, 531 U.S. 57, 62 (2000). In addition, a court may vacate an arbitration award "where the arbitrators exceeded their powers." 9 U.S.C. § 10(a)(4). An arbitrator exceeds his powers when he bases his decision on "some body of thought, feeling, or policy, or law that is outside the contract" such that his decision fails to "draw its essence" from the contract. *Enterprise Wheel and Car Corp.*, 363 U.S. at 597; *Chicago Typographical Union No. 16 v. Chicago Sun–Times, Inc.*, 935 F.2d 1501, 1505 (7th Cir. 1991); *Ethyl Corp.*, 768 F.2d at 184–85. But if there is "some possible interpretive route" showing the arbitrator rooted his decision in an interpretation of the contract, the award cannot be disturbed. *Chicago Typographical Union No. 16*, 935 F.2d at 1506.

**A.** **Hrubec's arbitration award**

Whitestone argues that the arbitrator in Hrubec's case exceeded his authority and that his award "must have been based on his own sense of industrial justice, because no support for it can be found in the CBA." Pl.'s Mem. in Support of Mot. for Summ. J. at 10.

The thrust of Whitestone's argument is that the CBA gives Whitestone sole discretion to determine whether just cause to terminate employment exists, at least in situations involving a breach of security or criminal misconduct. *Id.* at 11 (citing Compl., Ex. A, Art. VI § 4 ("Among the actions which may, as deemed appropriate by the Employer, result in and establish cause for discipline (including discharge) shall include,

7

but shall not be limited to . . . breach of security . . . or criminal misconduct."). The problem with this argument is that it essentially writes out of the CBA the provision on which the arbitrator relied. Article VI, § 1 of the CBA states that "[n]o employee, after completion of his or her probationary period, shall be disciplined in an arbitrary or capricious manner; all discipline shall be for just cause." *See* Compl., Ex. A, Art. VI § 1. Though Whitestone takes issue with the arbitrator's reliance on the manner in which Whitestone went about terminating Hrubec, consideration of such factors is fairly contemplated by the CBA's prohibition against discipline imposed "in an arbitrary or capricious manner." In short, the arbitrator did not go outside the CBA; he expressly relied on a term contained in that agreement. Because there is a "possible interpretive route to the award," *Chicago Typographical Union No. 16*, 935 F.2d at 1506, the Court cannot say that the arbitrator exceeded his authority.

The Court also notes that the arbitrator appropriately relied on Whitestone's differential treatment of Hrubec as compared with other employees who were not terminated despite similarly serious infractions. "[P]arties to collective bargaining agreements expect labor arbitrators to use their expertise and look to such sources as the law of the shop and prior practices in interpreting contracts." *Chicago Newspaper Publishers' Ass'n v. Chicago Web Printing Pressmen's Union #7*, 821 F.2d 390, 396-97 (7th Cir. 1987). "]T]though the arbitrator's decision must draw its essence from the agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem." *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 41 (1987). The arbitrator in Hrubec's case met the law's requirements here; he did not simply impose his own views of industrial justice.

Whitestone also argues that enforcement of the arbitrator's award would violate

public policy. Specifically, Whitestone contends that the order to reinstate Hrubec was contrary to the FAA's declaration that Hrubec would be unsuitable to work at an FAA facility. To vacate an arbitrator's award on this basis, there must be a violation of "some explicit public policy that is well-defined and dominant, . . . ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." *United Paperworkers Int'l Union*, 484 U.S. at 43 (internal quotation marks omitted).

The Court assumes for purposes of discussion that the FAA's statement regarding Hrubec's unsuitability would set up a conflict with public policy were he required to be reinstated to a job at an FAA facility. The issue before the Court, however, "is not whether any underlying actions by the parties violated public policy, but whether the specific actions ordered by the award do so." *Bhd. of Locomotive Eng'rs & Trainmen v. Union Pacific R. Co.*, 882 F. Supp. 2d 1032, 1040 (N.D. Ill. 2012) (citing *E. Associated Coal Corp..*, 531 U.S. at 62-63.

Nothing in the arbitrator's award required Whitestone or anyone else to violate public policy. It is true that the award directed Whitestone to reinstate Hrubec to his prior position. But the award did not require Whitestone to assign Hrubec to work at an FAA facility; it said nothing about where he was to be assigned. Indeed, Whitestone's contract with the FAA had already expired by the time the arbitrator issued his award. For that reason, reinstatement of Hrubec at that point could not possibly have caused a conflict with any FAA directive. And the award of back pay would not set up a conflict with FAA policy, as this simply involved payment of money. The Court therefore rejects Whitestone's public policy argument.

For these reasons, the Court grants summary judgment in favor of CFER on

9

Whitestone's claim regarding the Hrubec arbitration (Count 1 of Whitestone's complaint and part of Count 1 of CFER's counterclaim).

## B.     Radovanovic's arbitration award

The Court turns next to the arbitrator's decision regarding Radovanovic. Whitestone argues that having found that Radovanovic had committed serious violations of the company's rules, the arbitrator should have upheld his discharge. It contends that the arbitrator did not follow the CBA's requirements and instead went outside the CBA to impose his own notions of industrial justice.

The Court disagrees. As was the case with Hrubec, the arbitrator in Radovanovic's case considered the manner in which Whitestone went about terminating Hrubec and concluded, in essence, that the company had acted in an arbitrary and capricious manner. This sort of review was expressly contemplated by the CBA, as discussed earlier. Because there is a possible interpretive route within the four corners of the CBA that justifies the arbitrator's decision, there is no basis to vacate it on the ground that the arbitrator exceeded her authority.

The arbitrator also concluded that in terminating Radovanovic, Whitestone had proceeded on a false premise, namely that he was a probationary employee. This, too, was premised on the contract, specifically on its seniority provisions. *See* Compl., Art. III § 1 (seniority is based on length of continuous service with Whitestone and predecessor contractor).

CFER is entitled to summary judgment on this claim as well (Count 2 of the complaint and the remainder of Count 1 of the counterclaim).

## Conclusion

For the foregoing reasons, the Court grants defendant's motion for summary

judgment [docket no. 17] and denies plaintiff's motion for summary judgment [docket no. 22]. Counsel are directed to confer to prepare a proposed form of judgment incorporating this ruling and the separate decision dismissing count 2 of defendant's counterclaim, and they are to submit a proposal to the Court by no later than July 25, 2013. The case is set for a status hearing on July 29, 2013 at 9:30 a.m.

                                                                            _____
                                                                              MATTHEW F. KENNELLY
                                                                              United States District Judge

Date: July 19, 2013